**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 22-11-CJS**

**DELORES BUTLER**                                                                                      **PLAINTIFF**

**v.**                                    **MEMORANDUM OPINION AND ORDER**

**PILOT TRAVEL CENTERS, LLC, et al.**                                           **DEFENDANTS**

*** *** *** ***

This matter is before the Court on the Motion for Summary Judgment (R. 29) filed by

Defendants Pilot Travel Centers, LLC, (d/b/a Flying J Travel Center) and CFJ Plaza Company III,

LLC (collectively "Pilot").  Plaintiff Delores Butler filed a Response (R. 35), and Pilot filed a

Reply (R. 38).  Having considered the motion filings and the record generally, for the following

reasons, Defendants' Motion will be denied.

**I.      PROCEDURAL AND FACTUAL BACKGROUND**

On February 17, 2021, Plaintiff Butler and her son began a road trip from their home in

Cincinnati, Ohio to Atlanta, Georgia.  (*See* R. 29-1 at Page ID 102, pp. 36-37).  Butler testified in

deposition that at the time of their departure, the roads remained snow-covered from a storm that

passed through the area just two days prior.  (*See* R. 35 at Page ID 144; R. 29-1 at Page ID 103,

pp. 38-39).   During the trek south, passing vehicles splashed slush and mud onto Butler's

windshield.  (*See* R. 29-1 at Page ID 102-03, pp. 37-38).  The windshield wipers were functional,

yet the vehicle was unable to spray any cleaning fluid because the spraying nozzles had apparently

frozen.  (*See id*.).  As a result, Butler exited the highway and stopped to clean her windshield on

two separate occasions.  (*See id*.).  The first stop was at a gas station in Northern Kentucky,

unrelated to the present matter.  (*See id*.).  Having cleaned her windshield during the first stop, Butler returned to the highway and continued travelling.  (*See id*.).

Butler's second stop was at Pilot's gas station in Walton, Kentucky.  (*See id*.).  Butler parked just past one of the fuel pumps, exited her vehicle, and began looking for paper towels.  (*See id*. at Page ID 103, pp. 38-41).  Butler's son remained in the vehicle, asleep.  (*See id*. at Page ID 104, pp. 42-43).  Butler testified that she "pulled past the fuel pump because [she] only wanted to wipe [her] windows" and did not plan on filling her vehicle with gas.  (*Id*. at Page ID 104, p. 44).  Butler clarified that she would have purchased something for her son if he had been awake at the time of the stop.  (*See id*.; *see also id*. at Page ID 116-17, pp. 92-94; R. 35 at Page ID 144-45).  Butler confirmed, however, that had she not fallen, her plan was to clean her windows and get back on the road.  (*See* R. 29-1 at Page ID 104, p. 44).  A nearby customer informed Butler that a paper towel dispenser was located on a pole between the two fuel pumps.  (*See id*. at Page ID 103, pp. 39-41).  Each fuel pump and dispenser-pole were located on a raised platform.  (*See id*.).  Rather than walk around the elevated area, Butler stepped onto the raised platform to reach the paper towel dispenser.  (*See id*. at Page ID 103-04, pp. 39-42, 44-45; Page ID 105-06, pp. 49-50).  After acquiring several paper towels, Butler turned toward her vehicle and, in doing so, slipped and fell from the raised platform.  (*See id*.).  Butler testified that she was aware that she was walking in snow.  (*See id*. at Page ID 105, p. 49).  She clarified, however, that she was unaware of the ice hidden beneath the snow that ultimately caused her to slip.  (*See id*. at Page ID 105, p. 46).  Don Warman, the General Manager at that location, testified that based on his experience at that location, snow and ice tended to gather around the fuel pumps after every winter event.  (*See* R. 35-3 at Page ID 162, p. 23).  Mr. Warman further testified that during winter, "[t]he amenities

are typically used more often, the paper towels, washer buckets, so those are inspected more often and filled more often." (*Id*. at Page ID 163-64, pp. 29-30).

As a result of the fall, Butler sustained injuries to her lip/chin, neck, right shoulder, and both wrists. (*See* R. 35 at Page ID 145). Several individuals came to Butler's aid, including two gas station employees. (*See* R. 29-1 at Page ID 106-07, pp. 53-57). After helping Butler stand, the employees sat her down in her vehicle. Mr. Warman took down Butler's information, which he later used to complete a standard "Customer Accident Form." (*See* R. 35 at Page ID 145; R. 35-2). Butler testified that, at the time of her fall, she believed she did not require medical attention and therefore continued her trip south. (*See* R. 29-1 at Page ID 107, p. 57). Butler received medical treatment when she arrived in Atlanta and upon her return to Cincinnati. (*See* R. 29-1 at Page ID 109-11, pp. 63-73).

On January 12, 2022, Butler filed a Complaint in Boone Circuit Court, alleging Pilot was negligent in maintaining the premises. (*See* R. 1-1 at Page ID 5-6). On February 2, 2022, Pilot filed a Notice of Removal in the Eastern District of Kentucky, removing the case to this Court based on diversity jurisdiction. (*See* R. 1). On that same date, Pilot also filed an Answer. (*See* R. 9). A Scheduling Order was issued (*see* R. 17) and the parties engaged in discovery, following which Pilot filed the instant Motion for Summary Judgment (R. 29), which has been fully briefed.

Pilot's primary argument is that based solely on Butler's own testimony, she entered the premises for the singular purpose of using the free paper towels to clean her vehicle's windshield, rendering her a licensee rather than an invitee. (*See* R. 29). Pilot maintains that under the standard of care associated with a licensee, it only owed Butler a duty to refrain from willfully or wantonly causing her injury and therefore her claim is not supported by the facts alleged. (*See id*.). Pilot alternatively argues that it was absolved of any duty it owed to Butler because she failed to

appreciate the risks of traversing over snow and failed to utilize the area of the parking lot that was meant for pedestrian traffic. (R. 38 at Page ID 173-75).

Butler asserts that genuine disputes of material fact exist regarding her status on the premises. (*See* R. 35 at Page ID 151-52). Butler argues she was an invitee because Pilot held its business "open to the public providing free and accessible windshield cleaning stations to travelers." (*Id*. at Page ID 152). Butler emphasizes that Pilot treated her as an invitee when the general manager of the store completed a "Customer Accident Form" with respect to her incident. (*Id*.). Butler further emphasizes that she has a "customary practice" of purchasing a soda for her son whenever they travel together. (*Id*.). Butler alternatively argues that even if she is considered a licensee, whether Pilot breached the standard of care applicable to that status is a question of fact for the jury. (*See id*. at Page ID 147).

## II.    STANDARD OF REVIEW

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56. That Rule provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has met its burden, the burden shifts to the nonmoving party to present specific facts showing there is a genuine issue of material fact. *Arendale v. City of Memphis*, 519 F.3d 587, 593-94 (6th Cir. 2008) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). When ruling on motions for summary judgment, courts accept the nonmovant's evidence as true and draw all reasonable inferences in favor of the nonmovant. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). Summary judgment will not be granted if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

4

However, to survive summary judgment, the nonmoving party cannot rely on "conjecture or conclusory accusations" but "must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Arendale*, 519 F.3d at 605 (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). Conclusory assertions that are supported only by the asserter's own opinions cannot withstand a motion for summary judgment. *Id.*

## III.   ANALYSIS

### A.   Applicable Law

This action is in federal court based on diversity of citizenship under 28 U.S.C. § 1332. (*See* R. 1). Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938), a federal court sitting in diversity must apply the substantive law of the state in which it is sitting. *See Hanna v. Plumer*, 380 U.S. 460, 466 (1965) (explaining *Erie*). Thus, the Court "must apply state law in accordance with the controlling decisions of the highest court of the state," which is the Supreme Court of Kentucky. *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999) (citing *Erie R.R. Co.*, 304 U.S. 64); *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 636 (6th Cir. 2018). Where the Kentucky Supreme Court has not addressed the issue, the Court "must attempt to ascertain how that court would rule if it were faced with the issue." *Meridian Mut. Ins. Co.*, 197 F.3d at 1181. In making this determination, the Court "may use the decisional law of the state's lower courts, other federal courts construing state law, restatements of law, law review commentaries, and other jurisdictions on the 'majority' rule." *Id.* (citing *Grantham & Mann v. American Safety Prods.*, 831 F.2d 596, 908 (6th Cir. 1987)). Put differently, the Court is to "predict how the [Kentucky Supreme Court] would rule by looking to all the available data." *Allstate Ins. Co. v. Thrifty Rent-A-Car Systems, Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). However, the Court

"should not disregard the decisions of intermediate appellate state courts unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Meridian Mut. Ins. Co.*, 197 F.3d at 1181 (citing *Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967)).

Under Kentucky law, the basic elements of a negligence claim are "duty, breach, causation, [and] damages." *Carter v. Bullitt Host, LLC*, 471 S.W.3d 288, 298 (Ky. 2015). That is, a successful negligence action requires the existence of (1) a duty owed from the defendant to the plaintiff, (2) a breach of that duty, (3) injury to the plaintiff, and (4) causation between the breach and the injury. *See, e.g.*, *Pathways, Inc. v. Hammons*, 113 S.W.2d 85, 89 (Ky. 2003). Typically, duty is a question of law, *see Bramlett v. Ryan*, 635 S.W.3d 831, 835-38 (Ky. 2021), while breach and damages are questions of fact; causation can be either or both, *see Pathways*, 113 S.W.2d at 89.

To determine whether a duty exists, the Court examines "whether a plaintiff's interests are entitled to legal protection against the defendant's conduct." *Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901, 908 (Ky. 2013). In other words, "duty is outlined by the relationship between the parties." *Id*. Under premises liability, "'a landowner has a general duty to maintain the premises in a reasonably safe manner; and the scope of that duty is outlined **according to the status of the plaintiff**.'" *Smith v. Smith*, 563 S.W.3d 14, 16 (Ky. 2018) (emphasis in original) (quoting *Shelton*, 413 S.W.3d at 909 n.28). Specifically, a land possessor's duty is determined by the status of the injured party as "'an invitee, licensee, or trespasser.'" *Id*. (quoting *Shelton*, 413 S.W.3d at 909). For example, "[a] possessor of land owes a licensee a duty to 'not knowingly let[] her come upon a hidden peril or willfully or wantonly caus[e] her harm.'" *Id*. at 17 (quoting *Terry v. Timberlake*, 348 S.W.2d 919, 920 (Ky. 1961)). And "[i]n contrast to a licensee, an invitee is owed a duty of 'reasonable care,' such that an invitee 'enters the premises with the implied

6

assurance of preparation and reasonable care for his protection and safety while he is there.'" *Id.* at 17-18 (quoting Restatement (Second) of Torts § 341A cmt. a.).

As an initial matter, Butler argues Kentucky has abandoned the distinction between invitee and licensee. (*See* R. 35 at Page ID 148-50). Indeed, the Supreme Court of Kentucky has found support for "abandoning status-based duties" and noted that the distinctions between an invitee and a licensee "are often minor and unclear." *Shelton*, 413 S.W.3d at 909 & n.28 (citing *Perry v. Williamson*, 824 S.W.2d 869, 875 (Ky. 1992), *Hardin v. Harris*, 507 S.W.2d 172, 175-76 (Ky. Ct. App. 1974), and Restatement (Third) of Torts § 51 cmt. a (2012)); *see also Carney v. Galt*, 517 S.W.3d 507, 512 & n.4 (Ky. Ct. App. 2017). However, in *Shelton* the Kentucky Supreme Court declined to adopt that approach "mainly because" the case was "easily decided without crossing that threshold." *Id.* And since *Shelton*, the Supreme Court of Kentucky has affirmed it "continue[s] to follow the Restatement (Second) of Torts §§ 329-343" and "remains steadfast in its adherence to the traditional notion that duty is associated with the status of the injured party as an invitee, licensee, or trespasser.'" *Smith*, 563 S.W.3d at 17 (quoting *Shelton*, 413 S.W.3d at 909); *see Hayes v. D.C.I. Properties-D KY, LLC*, 563 S.W.3d 619, 623 (Ky. 2018) (same); *see also Greer v. Kaminkow*, 401 F. Supp. 3d 762, 771 n.11 (E.D. Ky. 2019). Thus, contrary to Butler's calls to abandon a distinction between invitee and licensee, Kentucky's adherence to the three status-based categories "remains steadfast." *Smith*, 563 S.W.3d at 17-18 ("The duties of a possessor based on whether an entrant is an invitee or a licensee are clearly different. . . . Today, as in *Kirschner* [*v. Louisville Gas & Elec. Co.*, 743 S.W.2d 840 (Ky. 1988)], we reject the assertion that we should abolish the classifications of trespasser, licensee, and invitee."). When sitting in diversity, this Court must likewise remain steadfast in applying Kentucky law.

### B.      Status on the Premises

Pilot asserts that Butler entered the premises as a licensee rather than an invitee.  According to Pilot, "[a]n invitee is someone present on the property for business activities of mutual interest to both them and the property owner."  (R. 29 at Page ID 89).  Pilot analogizes this case with *Preston v. Pleasureville Chevron, LLC*, No. 2007-CA-000721-MR, 2008 WL 746683 (Ky. Ct. App. Mar. 21, 2008).  (*See* R. 29 at Page ID 90-91).  In *Preston*, the plaintiff entered the premises of a gas station solely to use a payphone located at the edge of the parking lot.  *Preston*, 2008 WL 746683, at *1.  Because the payphone was occupied at the time, the plaintiff entered the convenience store and asked to use the business telephone.  *Id*.  Upon being denied permission, the plaintiff exited the building, tripped on the curb bordering the parking lot, and fell into a parked car, fracturing her left arm.  *Id*.  The plaintiff filed a complaint, alleging that the curb was negligently maintained and hazardous.  *Id*.  The trial court granted the defendant's motion for summary judgment, finding that the plaintiff "was a licensee on the premises and that the curb was open and obvious as a matter of law."  *Id*.  The plaintiff appealed the trial court's grant of summary judgment, arguing that material issues of fact existed to warrant a jury trial, specifically, that she was a business invitee and that the defendant breached its duty of care.  *Id*. at *2.  The court of appeals affirmed the trial court's grant of summary judgment, finding that the plaintiff was a licensee, and that the defendant did not have a duty to warn the plaintiff because the curb was not a dangerous condition on the property.  *Id*. at *2-3.  With respect to a person's status on a premises, the court noted the following:

> An invitee enters upon the premises at the express or implied invitation of the owner or occupant on business of mutual interest to them both, or in connection with business of the owner or occupant. A licensee enters by express invitation or implied acquiescence of the owner or occupant solely on the licensee's own business, pleasure or convenience.

*Id*. at \*2 (quoting *Scuddy Coal Co. v. Couch*, 274 S.W.2d 388, 390 (Ky. 1955)).  The court concluded that the plaintiff was a licensee because the defendant derived no benefit from the plaintiff's presence on the premises.  *Id*.

Pilot argues that, like the plaintiff in *Preston*, Butler provided no benefit to Pilot and was therefore a licensee.  Specifically, Pilot asserts that based on Butler's own testimony, she entered the property for the sole purpose of cleaning her windshield which provided no benefit to Pilot.  (*Id*. at Page ID 90-91).  Pilot clarifies that Butler's status as a licensee is "supported by the efforts she made to pull up past the fuel pumps so that she was not preventing other customers from accessing the pumps."  (*Id*. at 91).  Pilot concludes that "[a]s a matter of law, that makes [Butler] a licensee and not an invitee.  In turn, that means a negligence claim against the Defendants is not sustainable or supported by these facts."  (*Id*.).

Butler counters that Pilot defines "invitee" too narrowly, pointing to the Kentucky Supreme Court's decision in *Smith* for a broader definition.  (*See* R. 35 at Page ID 151).  As previously noted, in *Smith* the Kentucky Supreme Court confirmed it "continue[s] to follow the Restatement (Second) of Torts §§ 329-343" and defined an invitee as "either a public invitee or a business visitor."  *Smith*, 563 S.W.3d at 17 (quoting Restatement (Second) of Torts § 332).  In turn, the Restatement (Second) of Torts § 332 defines "public invitee" and "business visitor" as follows:

> A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

> A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

*Id*.  Butler maintains she was an invitee, and that *Preston* is distinguishable on that basis.  She argues that "[r]equesting a private business telephone is clearly not a service widely held out to the public that individuals are regularly invited to use, such as the windshield cleaning supplies

available" at Pilot's gas station. (R. 35 at Page ID 152). Butler further asserts that Pilot "made the decision to make these premises open to the public providing free and accessible windshield cleaning stations to travelers." (*Id.*). As evidence that Pilot held its premises open to the public for those services, Butler points to Mr. Warman's testimony. (*Id.*). Butler explains that Mr. Warman acknowledged that the windshield cleaning supplies were offered as amenities and that maintaining the supplies was one of the employees' duties. (*Id.*). Butler also points to the "Customer Accident Form" as evidence that the gas station employees in fact treated her as a customer (i.e., an invitee) rather than a licensee. (*Id.*).

The parties' dispute surrounding Butler's status on the premises is a legal one rather than a factual one. "When the facts of a case are undisputed, the determination of the duty owed by a landowner to a guest is a question of law to be determined by the court." *City of Barbourville v. Hoskins*, 655 S.W.3d 137, 141 (Ky. 2022) (citing *Bramlett v. Ryan*, 635 S.W.3d 831, 837 (Ky. 2021)). That is, "the purview of the jury is diminished" only if the Court impedes on the "traditional functions of the jury" by "weighing the testimonies" or "assigning credibility." *Bramlett*, 635 S.W.3d at 837-38.

Here, Pilot does not dispute that there was snow and ice on the island (*see* R. 38 at Page ID 173), that the paper towels were located on the premises and were free-of-charge (*see id.* at Page ID 174), that Butler's injury was documented on a standardized form for customers (*see* R. 35-2), or that the general manager testified the employees' duties included maintaining the supplies and the condition of the parking lot (*see* R. 35-3). Likewise, Butler does not dispute that her primary purpose for stopping at the gas station was to clean the windshield of her vehicle (*see* R. 35 at Page ID 144; *see also* R. 29-1 at Page ID 104) or that she did not make any purchases during her visit (*see id.* at Page ID 104, 116-17; *see also* R. 35 at Page ID 144-45). *See Bramlett*, 635

10

S.W.3d at 837-38 (noting that a factual dispute concerning "the intent behind and purpose of" a person's visit to a premises that is dispositive to the determination of the land possessor's duty to the entrant is appropriately submitted to the jury). Here, the parties disagree about Butler's status on the premises as a matter of law. For example, Butler argues that she was an invitee because Pilot "made the decision to make these premises open to the public providing free and accessible windshield cleaning stations to travelers." (R. 35 at Page ID 152). On the other hand, Pilot argues that "[t]he paper towels were available free of charge, thereby implying that even those who are not invitees/customers may use them. The mere fact that the paper towels were available to the public does not mean that anyone who chooses to use them is thereby an invitee." (R. 38 at Page ID 174). Thus, the facts surrounding Butler's reason for being on the premises are undisputed; therefore "[t]he determination of the existence of a duty is still a legal question for the court to determine." *Bramlett*, 635 S.W.3d at 839.

Butler resists this conclusion, stating that "she was *in fact* an invitee at Defendant's premises as they held the property open to the public and induced citizens to utilize their facilities for safe travel among other amenities." (R. 35 at Page ID 151) (emphasis added). But merely including the words "in fact" does not make it so. Pilot does not dispute that it is a business that holds itself open to the public for business purposes. Instead, Pilot argues the degree to which it holds itself open: "[t]he mere fact that the paper towels were available to the public does not mean that anyone who chooses to use them is thereby an invitee." (R. 38 at Page ID 174). In other words, the true debate is whether Butler's use of the paper towels offered by Pilot free of charge rendered her a licensee under Kentucky law. This presents a question of law for the Court to determine. As Butler correctly notes, Kentucky courts look to the Restatement (Second) of Torts to define the status of an entrant. *See Smith*, 563 S.W.3d at 17-18.

11

Viewing the undisputed facts in the light most favorable to Butler, Butler was arguably a business visitor or a public invitee; but she was not a licensee at the time she entered Pilot's premises. A "business visitor" is defined as "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Id*. § 332(3). Butler was driving a motor vehicle in snowy conditions when she stopped at Pilot's gas station to utilize the windshield cleaning supplies that Pilot offered free of charge. (R. 29-1 at Page ID 104, p. 44). The paper towels were located adjacent to the fuel pumps and approximately five-to-ten feet from Butler's vehicle since she pulled past the fuel pumps. (*See id*.). The General Manager of that location testified that the employees were required to monitor and maintain the supplies, particularly during the winter. (R. 35-3 at page ID 163-64, pp. 29-30). Under the circumstances, the windshield cleaning supplies are arguably "*indirectly* connected with [the] business dealings" of Pilot. Restatement (Second) of Torts § 332 (emphasis added); *see Smith*, 563 S.W.3d at 17. The commentary to the Restatement is instructive:

> The nature of the use to which the possessor puts his land is often sufficient to express to the reasonable understanding of the public, or classes or members of it, a willingness or unwillingness to receive them. Thus the fact that a building is used as a shop gives the public reason to believe that the shopkeeper desires them to enter or is willing to permit their entrance, not only for the purpose of buying, but also for the purpose of looking at the goods displayed therein or even for the purpose of passing through the shop. This is true because shopkeepers as a class regard the presence of the public for any of these purposes as tending to increase their business.

Restatement (Second) of Torts § 332, cmt. c. Pilot's use of the premises as a fuel station for motor vehicles, combined with its practice of providing windshield cleaning supplies free-of-charge, is sufficient to conclude that Pilot reasonably expressed to Butler a willingness to receive her for the purpose of using those supplies. Indeed, Butler testified that her reason for entering Pilot's premises was to utilize those services. (R. 29-1 at Page ID 104, p. 44). And Pilot does not claim

12

that it intends the cleaning supplies to be free for only those individuals who make a purchase; thus, Butler arguably need not make a purchase in order to be considered an invitee, so long as the purpose of her visit tended to increase and therefore indirectly connected with Pilot's business dealings. *See* Restatement (Second) of Torts § 332, cmt. f. ("It is not necessary that the visitor's purpose be to enter into immediate business dealings with the possessor. The benefit to the possessor may be indirect and in the future. Thus, those who enter a shop with no present purpose of buying but merely to look at the goods displayed, are business visitors of the shop. . . .").

Even if the purpose of Butler's visit was not indirectly connected with Pilot's business dealings to render her a business visitor, Butler was arguably a public invitee at the time she entered Pilot's premises. A "public invitee" is defined as "a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public." Restatement (Second) of Torts § 332(2). The Restatement provides a simple illustration: "A maintains in his drugstore a free telephone for the use of the public. B enters the store for the sole purpose of using the telephone. B is an invitee." *Id*. at § 332 cmt. d., illustration 4. As noted previously, Pilot reasonably expressed to Butler a willingness to receive her for the purpose of using the cleaning supplies and Butler testified that her reason for entering Pilot's premises was to utilize those supplies. (R. 29-1 at Page ID 104, p. 44). In addition, Pilot does not claim that it intends the paper towels to be free for only those individuals who make a purchase.

Pilot's reliance on *Preston* is not convincing. The court in *Preston* defined invitee to include a person who "enters upon the premises at the express or implied invitation of the owner or occupant on business of mutual interest to them both, or in connection with business of the owner or occupant." 2008 WL 746683, at *2 (quoting *Scuddy Coal Co.*, 274 S.W.2d at 390). The court concluded the plaintiff was a licensee because she entered the premises to use the telephone

and therefore "solely for her own benefit." *Id.*  Pilot relies on the "mutual interest" language in *Preston* to argue Butler was a licensee, rather than an invitee, because Butler's visit provided no benefit to Pilot.  However, while this language may be helpful in distinguishing between a business visitor and a licensee, this mutual benefit requirement need not exist to find an individual a public invitee.  Comment d to § 332 of the Restatement states that

> [w]here land is held open to the public, it is immaterial that the visitor does not pay for his admission, or that the possessor's purpose in so opening the land is not a business purpose, and the visitor's presence is in no way related to business dealings with the possessor, or to any possibility of benefit or advantage, present or prospective, pecuniary or otherwise to the possessor.

Restatement (Second) of Torts § 332 cmt. d.  And as noted previously, Butler entered Pilot's premises to utilize the window cleaning services it offered free of charge and maintained for use by the public.  In addition, another division of this Court has expressed "doubt about *Preston*'s vitality given its place relative to the chronology of Kentucky premises law."  *Cornelison v. Speedway, LLC*, No. 6:20-CV-207-REW-HAI, 2023 WL 1452051, at *4 & n.7 (E.D. Ky. Feb. 1, 2023) (citing *Spears v. Schneider*, No. 2012-CA-000065-MR, 2015 WL 2153310, at *3 (Ky. Ct. App. May 8, 2015).  Thus, *Preston* is inapposite, and Butler was an invitee at the time she entered Pilot's premises.[1]

---

[1]   As noted above, Kentucky defines an invitee as "either a public invitee or a business visitor." *Smith*, 563 S.W.3d at 17 (quoting Restatement (Second) of Torts § 332).  Concluding that Butler was a business visitor would carry with it an additional consideration, namely, whether the burden-shifting framework outlined in *Lanier v. Wal-Mart Stores, Inc.*, 99 S.W.3d 431 (Ky. 2003) and its progeny applies. While the Sixth Circuit has discussed the general uncertainty with which *Lanier* burden-shifting is applied, *see Littleton v. Lowe's Home Centers, LLC*, No. 21-5033, 2021 WL 4058004, at *2-3 (6th Cir. Sept. 7, 2021) (collecting cases), the Circuit has also noted that "at least in the slip-and-fall context, the *Lanier* framework is alive and well."  *Nelson v. Costco Wholesale Corp.*, No. 21-5666, 2022 WL 221638, at *4 (6th Cir. Jan. 26, 2022) (citing *Phelps v. Bluegrass Hosp. Mgmt., LLC*, 630 S.W.3d 623, 628 (Ky. 2021), the most recent decision from the Supreme Court of Kentucky to cite *Lanier*, involving a restaurant-goer's slip-and-fall on an allegedly waxy dining room floor).  One Kentucky appellate court has held that *Lanier* burden shifting did not apply to a business visitor's slip-and-fall on black ice in a parking lot, finding that the caselaw treated artificial indoor hazards and naturally occurring outdoor hazards differently. *See Bryan v. O'Charley's Inc.*, No. 200-CA-001503-MR, 2003 WL 21949182, at *3 (Ky. Ct. App. Aug. 15, 2003) (citing *Standard Oil v. Manis*, 433 S.W.2d 856 (Ky. 1968)).  However, the Kentucky Supreme Court has

Pilot therefore owed her a duty "to discover unreasonably dangerous conditions on the land and either eliminate or warn of them." *Shelton*, 413 S.W.3d at 909. Pilot resists such a conclusion, arguing that even if Butler was an invitee, it was absolved of its duty by virtue of Butler's own conduct. Specifically, Pilot emphasizes Butler's testimony that in retrieving the paper towels, she crossed over the fuel island. (*See* R. 29-1 pp. 44-50, Page ID 104-06). Pilot clarifies that the fuel island is not meant for pedestrian traffic. (*See* R. 38 at Page ID 173). In addition, Pilot emphasizes Butler's testimony that she was aware of the snow on the ground. (*See* R. 29-1 p. 49, Page ID 105). Pilot argues that the snow and ice were "clearly visible," and therefore Butler should have been able to "appreciate the risk involved" when traversing the area. (R. 38 at Page ID 175).

However, Pilot cannot absolve itself of its duty by placing a degree of blame on Butler. Kentucky law has "shift[ed] from the old common law's complete defense of contributory negligence, in its many guises, toward a new regime in which a plaintiff's own negligence no longer bars his or her claim." *Grubb v. Smith*, 523 S.W.3d 409, 415 (Ky. 2017). As a result of the change to comparative fault, Kentucky courts have made a "determined effort" "to return most open and obvious cases to jury consideration." *Id.* at 418; *see Greer*, 401 F. Supp. 3d at 770; *see*

---

since applied *Lanier* burden shifting to a restaurant-goer's slip-and-fall on an oil spill in the parking lot. *See Martin v. Mekanhart Corp.*, 113 S.W.3d 95 (Ky. 2003). In addition, in a 2015 case involving a business visitor's slip-and-fall on ice under a hotel's car port, the Kentucky Supreme Court abrogated *Standard Oil* and "the general rule 'that *natural outdoor hazards* which are as obvious to an invitee as to an owner of the premises do not constitute *unreasonable* risks to [the invitee] which the landowner has a duty to remove or warn against.'" *Carter v. Bullitt Host, LLC*, 471 S.W.3d 288, 291 (Ky. 2015) (emphasis in original).

Yet, there may be a question of whether *Lanier* burden shifting applies to *public invitees*. In declining to extend *Lanier* burden shifting to contractors, the Kentucky Supreme Court clarified that *Lanier* "concerned shifting the burden from a 'customer,'" not "other types of business invitees, such as independent contractors' employees." *Brewster v. Colgate-Palmolive Co.*, 279 S.W.3d 142, 149-50 (Ky. 2009). Thus, the Court "explicitly limit[ed] *Lanier* to cases involving *customers* or *clients* or *patrons* suffering 'slip and falls' or other injuries resulting from dangerous conditions on a business owner's premises." *Id.* at 150 (emphasis added). In addition, the Court's own research demonstrates there is not a single case from a Kentucky court citing *Lanier* and including the words "public invitee." And neither party cites to *Lanier* in their briefs. Because neither party pushes the issue, the Court is not inclined to rule on whether *Lanier* burden shifting applies.

*also Dunn v. Wal-Mart Stores East, L.P.*, 724 F. App'x 369, 374 (6th Cir. 2018) ("The Kentucky Supreme Court has repeatedly and explicitly declared that, under comparative fault, the unreasonableness and foreseeability of the risk of harm is normally a question for the jury to determine in deciding whether the defendant breached its duty of care in all but the rarest of circumstances."). Indeed, the Supreme Court of Kentucky has recognized that this concerted effort applies to "all open and obvious hazard cases, *including obvious natural outdoor hazard cases*." *Carter v. Bullitt Host, LLC*, 471 S.W.3d 288, 289-90 (Ky. 2015) (emphasis added). Thus, under comparative fault, "a landowner is not excused from *his own* reasonable obligations just because a plaintiff has failed to a degree, however slight, in looking out for his own safety." *Grubb*, 523 S.W.3d at 419 n.11 (emphasis in original) (quoting *Carter*, 471 S.W.3d at 298). That is, a "no-duty finding" based on Butler's failure to appreciate the risk of traversing the snow or her failure to utilize the proper walkway would be "nothing more than applying a contributory-negligence standard, which is no longer the law of [Kentucky]." *Carter*, 471 S.W.3d at 296. Instead, those are factors relevant to the jury's determination of breach and causation as well as apportionment of fault among the parties. *See id.* at 299. Therefore, even if Butler failed to notice the otherwise obvious presence of snow or failed to use the proper walkway, Pilot nonetheless owed her a duty as an invitee.

### C. Unreasonably Dangerous Condition

"An unreasonably dangerous condition is 'one that is recognized by a reasonable person in similar circumstances as a risk that should be avoided or minimized or one that is in fact recognized as such by the particular defendant." *City of Barbourville*, 655 S.W.3d at 141 (quoting *Shelton*, 413 S.W.3d at 914). "[W]hether an unreasonably dangerous condition existed on the land

possessor's premises sufficient to trigger the duty to warn or ameliorate" is a "question of fact" that is submitted to jury.  *Id*. (quoting *Shelton*, 413 S.W.3d at 916).

Butler testified that she fell due to slipping on ice.  (R. 29-1 at Page ID 105, p. 46).  Butler clarified that although she was aware of the snow, she was not aware of the ice that was hidden beneath it.  (*Id*. at pp. 46, 49).  Butler further testified that she did not see any salt used in the area.  (*Id*. at pp. 48-49).  Butler submitted evidence suggesting that Pilot was aware that its parking lot had accumulated snow and ice.  (*See* R. 35-2 at Page ID 160) ("Customer Accident Form" completed by Pilot employee stating that the store experienced "snow and ice over the past couple of days").  Mr. Warman, the General Manager for that location, agreed that snow and ice tended to accumulate around the fuel pumps after every winter weather event.  (*See* R. 35-3 at Page ID 162, p. 23).  He clarified that Pilot would use third-party snow removal services "as needed"; that is, when the employees could not "maintain it [them]selves at store level."  (*Id*. at Page ID 164, pp. 30-33).  According to Mr. Warman, it was part of the maintenance employee's responsibility to inspect the premises for hazards throughout the shift.  (*See id*. at Page ID 162, p. 24).  He also informed that as a part of his position as general manager, he regularly checked the parking lot for "any kind of safety concerns" and to make sure the "islands [were] cleaned."  (*Id*. at Page ID 163, pp. 27-28).  Mr. Warman confirmed that, during the winter months, he would note if there was snow or ice on the ground.  (*Id*. at p. 28).  He further confirmed that on the day of Butler's accident, he acknowledged there was snow and ice around the fuel pumps and directed the maintenance employee to prioritize removing the snow and ice.  (*Id*. at Page ID 165, p. 36). Viewing these facts in the light most favorable to Butler, she has produced enough evidence to show that a reasonable jury could determine that the ice was "unreasonably dangerous" and therefore "sufficient to trigger" Pilot's duty.  *City of Barbourville*, 655 S.W.3d at 141.

17

Furthermore, although the question of whether a condition is unreasonably dangerous can sometimes be determined by a court as a matter of law, those "rarest of circumstances" are not present here. *Dunn*, 724 F. App'x at 374.  Such circumstances exist only when "the plaintiff is entirely at fault," *Cundiff v. Worldwide Battery Co., LLC*, 835 F. App'x 117, 118-19 (6th Cir. 2021) (citing *Grubb*, 523 S.W.3d at 418), that is, "when a [condition on the premises] cannot be corrected by *any* means or when it is *beyond dispute* that the landowner had done all that was reasonable." *Carter*, 471 S.W.3d at 297 (emphasis added); *see Greer*, 401 F. Supp. 3d at 770 (noting that Kentucky's recent approach to premises liability cases "aims to advance a determined effort to limit holdings that a premises hazard is not unreasonable as a matter of law to those rare instances of where they are justified").

For example, in *City of Barbourville v. Hoskins*, a woman sued the city water park on a theory of premises liability, alleging that she sustained burns to her feet after spending about ten minutes walking on concrete walkways at the water park.  655 S.W.3d 137, 139-40 (Ky. 2022).[2] The trial court granted defendant's summary judgment on the premises liability claim, finding that "the allegedly sun-heated sidewalks did not pose an unreasonable risk of harm and the injury she sustained was not foreseeable." *Id*. at 140.  The court of appeals reversed the trial court's grant of summary judgment, finding that the matter should have been submitted to the jury to "assess both the reasonability of the risk and the foreseeability of the harm." *Id*.  The court of appeals determined that "we cannot conclude that the hazard at issue here could not be corrected by any

---

[2]  The plaintiff suffered from diabetic neuropathy which caused a loss of sensation in her feet. *Id*. at 140.  Thus, she did not experience any discomfort while at the park. *Id*.  However, upon returning home, she noticed blisters on her feet and attempted to self-treat her injuries. *Id*.  She sought professional medical treatment four days later. *Id*.  Because the blisters became infected, her left small toe and a portion of her foot required amputation. *Id*.

18

means or that it is beyond dispute that the landowner did all that was reasonable to correct or warn of the situation." *Id*.

However, the Supreme Court of Kentucky reversed the court of appeals and affirmed the trial court's determination that "no reasonable jury could conclude that the sun-heated concrete walkways were an unreasonably dangerous condition" and that "the circumstances of [the plaintiff's] injury [were] so unusual and unique that the City could not have anticipated her injury nor could it have reasonably done more to prevent her injury." *Id*. at 142.  In so deciding, the Kentucky Supreme Court found that the plaintiff "provided no evidence that the walkways at the water park were negligently maintained or defectively designed"; "provided no evidence that other water parks take steps to minimize the sun-generated heat of their concrete walkways"; "provided no expert testimony regarding industry standards or practices which Barbourville Water Park failed to comply"; "produced no evidence that a reasonable person in the place of the City would have taken any action to eliminate the alleged risk created by the sun heating the concrete walkways"; "produced no evidence of any feasible means the City could have undertaken to lessen the alleged risk created by the summer sun"; "did not produce any evidence that the City acted outside of industry standard practices"; and "did not provide any evidence why the City would anticipate injuries like hers to take place."  655 S.W.3d at 142-43.  The Kentucky Supreme Court concluded that this was one of the "rare circumstance[s] in which plaintiff provided no evidence of the existence of an unreasonably dangerous condition such that summary judgment was appropriate." *Id*. at 143.

Here, as addressed previously, Butler has produced enough evidence to submit the question to a jury.  Butler testified that she slipped on ice that was hidden beneath the snow.  (*See* R. 29-1 at Page ID 105, pp. 46-49).  Butler further testified that she did not see any salt spread in the area.

19

(*See id.*).  Butler submitted as evidence a "Customer Accident Form" suggesting that even the gas station employees considered her to be a customer.  (*See* R. 35-2).  The General Manager of the store testified regarding the employees' general duties to maintain the supply levels and condition of the parking lot.  (*See* R. 35-3 at Page ID 162, p. 24).  The General Manager further testified that snow and ice were present on the day of Butler's accident.  (*See id.* at Page ID 165, p. 36).  This record is a far cry from that of the plaintiff's in *City of Barboursville*.  Thus, a reasonable jury could determine that Butler was not "entirely at fault," *Cundiff*, 835 F. App'x at 119, or that in maintaining the parking lot, Pilot had failed to do "all that was reasonable," *Carter*, 471 S.W.3d at 297.  Thus, this case does not present the "rarest of circumstances" where it is appropriate for this Court to determine as a matter of law "the unreasonableness and foreseeability of the risk of harm." *Dunn*, 724 F. App'x at 374.  Instead, the question of whether "an unreasonably dangerous condition existed on the land possessor's premises sufficient to trigger the duty to warn or ameliorate" should be submitted to a jury.  *City of Barbourville*, 655 S.W.3d at 141.

## IV.     CONCLUSION and ORDER

"It is true that no one controls the weather; but neither is anyone reasonably expected to do so.  A landowner is held only to reasonable conduct." *Carter*, 471 S.W.3d at 299.  As an invitee, Pilot owed Butler a duty "to discover unreasonably dangerous conditions on the land and either eliminate or warn of them." *Shelton*, 413 S.W.3d at 909.  On this record, the Court cannot determine as a matter of law that the hazard Butler faced was open and obvious or unreasonably dangerous.  A jury must assess the obviousness of the risk.

Therefore, for the reasons discussed above, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (R. 29) is **DENIED.**

Signed this 29th day of September, 2023.



**Signed By:**

**_Candace J. Smith_**

**United States Magistrate Judge**

J:\DATA\Orders\civil cov\2022\22-11-CJS MOO denyg MSJ #29.docx